UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| KRISTINA G. MEYER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18-cv-00004-SNLJ |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Kristina Meyer's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Meyer now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.      Procedural History**

Meyer's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Meyer was not disabled because her symptoms were not supported by the medical evidence available. Thereafter, Meyer filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied. Meyer then filed a complaint with this Court, Case No. 1:15-cv-00006. In that case, Judge Ross reversed and

1

remanded the decision of the ALJ. Judge Ross concluded the ALJ had "failed to address Meyer's moderate limitations in concentration and persistence in his hypothetical," therefore "the vocational expert's testimony was based on a deficient hypothetical [that] cannot constitute substantial evidence." (Tr. 1173). Upon remand, a new ALJ undertook to include "specific moderate limitations related to concentration and persistence in addition to those related to pace in a hypothetical question so that the vocational expert might accurately determine the claimant's ability to work." (Tr. 1044). Despite this additional inquiry, the ALJ concluded Meyer was not disabled. (Tr. 1058). Upon filing a second case, this matter now returns to this Court once more for review of the ALJ's determination pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in

2

substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003)

(internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the

claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

**III. The ALJ's Decision**

At Step One, the ALJ found Meyer met the insured status requirements through December 31, 2011, and had not engaged in substantial gainful activity since February 17, 2006. (Tr. 1047). At Step Two, the ALJ found Meyer suffers from nine severe, medically-determinable impairments: (1) degenerative joint disease of the knees; (2) degenerative disc disease of the cervical and lumbar spines; (3) obesity; (4) heel spurs and plantar fasciitis post-surgery; (5) depressive disorder; (6) bipolar disorder; (7) generalized anxiety disorder; (8) panic disorder; and (9) obsessive-compulsive disorder. (Tr. 1047).[1] At Step Three, the ALJ concluded Meyer does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 1047).

---

[1] Meyer makes no arguments before this Court on the majority of these impairments. Instead, Meyer focuses on her depression and anxiety symptoms in relation to her first argument involving the weight that should be attributed to Dr. Pavan Palepu's mental health source statement and her carpal tunnel symptoms in relation to her second argument attacking the ALJ's step-two analysis.

5

Next, in beginning the analysis of Step Four, the ALJ determined Meyer's RFC.[2]

The ALJ found that Meyer

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, scaffolds, ramps, stairs crouch, or crawl. She can only occasionally stoop and kneel She must avoid exposure to concentrated levels of heights, excessive vibration, and hazardous machinery. She can perform jobs that are simple, routine, and repetitive tasks in a work environment free of fast-paced quota requirements and involving only simple work-related decisions with few if any work place changes and no interaction with the public and only occasional interaction with coworkers.

(Tr. 1049). As part of this determination, the ALJ found Meyer's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. (Tr. 1050). The ALJ noted that Meyer's "mental health treatment notes are [] unimpressive despite regularity and frequency of treatment," which overall exhibit only mild-to-moderate symptomology. (Tr. 1056). The ALJ also highlighted Meyer's medication non-compliance and her daily activities that include driving, taking care of her children, doing household chores, and even engaging in an at-home business making homemade soaps. (Tr. 1056). As for Meyer's carpal tunnel syndrome, the ALJ noted Meyer's childcare and soap business as evidence that she can "work with her hands and be self-sufficient." (Tr. 1055-1056). However, because of back

---

[2] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

and knee pain related to complications with obesity and degenerative disease, the ALJ concluded Meyer would nonetheless be limited to sedentary work. (Tr. 1056).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Meyer can perform her past relevant work given his designated RFC. The ALJ determined Meyer cannot perform any past relevant work. (Tr. 1057). At Step Five, the ALJ analyzed whether Meyer can successfully adjust to other work. The ALJ noted that if Meyer had the RFC to perform the full range of sedentary work—in other words, if Meyer's RFC matched perfectly with the Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Meyer's ability to perform all or substantially all of the sedentary work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Meyer's occupational base to perform sedentary work. The VE testified Meyer is able to perform work as a cafeteria hand assembly, table worker, and machine tender even after considering all of the limitations in Meyer's RFC. (Tr. 1057-1058). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Meyer is not disabled. (Tr. 1058).

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*,

240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

V. **Discussion**

Meyer makes two arguments in seeking reversal of the ALJ's decision. First, she argues the ALJ erred in not giving "great weight" to the opinions of treating psychiatrist, Dr. Pavan Palepu, who opined that Meyer would have marked difficulty coping in the

workplace due to stress and attention-related deficiencies.[3] Second, she argues the ALJ erred at step two of the analysis by not finding her carpal tunnel syndrome to be a severe impairment.

This latter issue is easily resolved, which Meyer dedicates only minimal effort to. Her laconic argument urges this Court to find that the ALJ erred in not treating her carpal tunnel syndrome as a severe impairment because, contrary to the ALJ's conclusion, she continues to suffer "weakness in her hands" that she believes "would make it difficult to perform a sedentary job." Be that as it may, the ALJ disregarded this subjective complaint in view of a totality of contrary objective evidence, which the ALJ is empowered to do. *See, e.g., Renstrom v. Astrue*, 680 F.3d 1057, 1066-1067 (8th Cir. 2012). In specific, the ALJ highlighted the fact that, after having undergone "carpal tunnel release [surgery]," there is "no medical evidence of any further complaints [by Meyer] or treatments for carpal tunnel syndrome." (Tr. 1047, 1051). To the ALJ, this signaled "a lack of duration of a severe [] impairment" and efficacy of treatment. (Tr. 1047). The ALJ also emphasized that the severity of Meyer's symptoms did not comport with her daily activities, which include taking care of a two-year-old child and making handmade soap from home as part of an at-home business. (Tr. 1055-1056). At one point

---

[3] The Court assumes Meyer is referring to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), both of which require that "controlling weight"—not merely "great weight"—be given to a treating source's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." There is, indeed, nothing in Section 404.1527 or Section 416.927 that would require "great weight," in particular, to be given to Palepu—that attribution, if it is to be given at all, lies in the sound discretion of the ALJ. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (describing only that "more weight" will be given "to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]").

between her initial diagnosis and subsequent surgery, Meyer even described an intention to leave her boyfriend, buy a home, be independent, garden, and "work with her hands" should she obtain disability. (Tr. 1052, 1547). Finally, the ALJ remarked that Meyer's carpal tunnel symptoms "became limiting only when she had her baby," suggesting situational symptomology. (Tr. 1047, 1339). Meyer, in fact, points to no medical records at all suggesting she has had further complications with carpal tunnel syndrome after her surgery and this Court could locate none. The ALJ clearly addressed the *Polaski* factors before disregarding Meyer's subjective complaints. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Bryant v. Colvin*, 861 F.3d 779, 782-783 (8th Cir. 2017) (noting the ALJ is not required to specifically address each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints."). Therefore, this Court finds the ALJ did not err in concluding Meyer's carpal tunnel syndrome was not a severe impairment. *See Renstrom*, 680 F.3d at 1066-1068 (holding the ALJ did not err in declining claimant's subjective complaints where symptoms were shown to have improved with treatment and where claimant's daily activities did not comport with the severity described by claimant).

As for the weight attributed to Palepu's opinions, he stated in a 2013 medical health source statement that Meyer would be absent from work more than three times per month, would have marked limitations in dealing with work-related stress, and would have difficult with attention and concentration. (Tr. 1030-1031). The ALJ disregarded these opinions because "Dr. Palepu only began treating [Meyer] in April 2013"—five months prior to the creation of the medical source statement—and because the statement

10

was, in any event, "inconsistent with Dr. Palepu's August 2013 treatment notes, which indicate the claimant's mental impairments are only mild to moderate." (Tr. 22, 1055). Regulations permit the length of a treatment relationship to bear on the weight assigned to a particular opinion, but only after concluding that the opinion should not to be given controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(i); 416.927(c)(2), (c)(2)(i). Thus, the true thrust, here, is not the length of treatment history but whether it was appropriate for the ALJ to disregard Palepu's medical source statement because it was inconsistent with his treatment notes.

There is, indeed, a well-documented skepticism of medical source statements that constitute checkbox-format conclusions and the ALJ is encouraged to look upon them with a critical eye. *See Adkins v. Commissioner*, 911 F.3d 547, 550 (8th Cir. 2018) (describing medical source statements as often "consist[ing] of a series of check marks" that "are conclusory opinions" weighing in on "residual functional capacity, [which is] a determination the ALJ must make"). An ALJ may discount such statements when "contradicted by other objective medical evidence in the record." *Id*. And that is precisely what the ALJ did here, highlighting how treatment notes from Palepu—including those dated just one month earlier—did not support the limitations he referenced in his medical source statement. In particular, many of Palepu's treatment notes referenced only mild-to-moderate limitation or else predominately normal examinations. (Tr. 820, 822, 930, 932, 934). Further, the ALJ commented on the totality of Meyer's mental treatment notes as being "unimpressive" despite the "regularity and frequency of treatment," with the majority of them indicating only moderate symptomology. To be sure, counseling and

11

mental status examination records are largely normal or mild, indicating Meyer has intact memory, judgment, and insight, is well-mannered, displays full orientation, possesses normal mood, and responds well to medication. (Tr. 826-827, 1012, 1436, 1487, 1491, 1497, 1499, 1505, 1507-1510, 1538-1539, 1555, 1571-1572, 1574, 1576, 1578-1581, 1586). Finally, the ALJ referenced Meyer's aforementioned daily activities as being inconsistent with the sort of debilitating stress, lack of focus, and lack of concentration indicated by Palepu. (Tr. 1055-1056).

All that must be shown under the regulations to disregard Palepu was either that his statement was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or else was "inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Having demonstrated that Palepu's opinions were conclusory and inconsistent with his own notes and the total record, this Court will not disturb the weight the ALJ attributed to Palepu's medical source statement. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006); *see also Gregory v. Commissioner*, 742 Fed.Appx. 152, 155 (8th Cir. 2018).

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

12

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff Kristina Meyer's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 29th day of March 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE